**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MARYLAND MANOR ASSOCIATES, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. H-10-1736 |
| CITY OF HOUSTON, | § § | |
| Defendant. | § § | |

**MEMORANDUM AND ORDER**

The plaintiffs, Maryland Manor Associates and Buckhead Investment Partners, Inc. (collectively, "Maryland Manor"), applied for a permit with the defendant, the City of Houston, for the construction of a multi-story mixed-use building. Citing traffic concerns associated with the proposed development, the City denied Maryland Manor's April 7, 2009 permit application. Maryland Manor sued, alleging that the City's denial violated equal protection and substantive due process under the federal and Texas constitutions, as well as § 245.002(a) of the Texas Local Government Code (the "Vested Rights Act").

The City has filed two motions to dismiss. In the first motion, the City argues that the plaintiffs' federal constitutional causes of action should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state claims upon which relief can be granted. (Docket Entry No. 40). In its second motion, the City argues that the plaintiffs' state statutory and constitutional claims should be dismissed under Rule 12(b)(1) because the City enjoys governmental immunity for suits for damages on those claims. (Docket Entry No. 38). Based on the pleadings; the motions, responses, and replies; and the record, this court grants in part and denies in part the City's motions.

A status and scheduling conference is set for **September 22, 2011**, at 3:00 p.m. in Courtroom 11-B.

The reasons for the rulings are set forth below.

I.  **Background[1]**

A.  **The Allegations in the Complaint**

Maryland Manor owns a 1.6-acre tract of land located at 1717 Bissonnet Street in Houston, Texas.  (Second Am. Compl. ¶ 8).  The plaintiffs want to replace the two-story, 67-unit apartment complex currently on the land with a five-level parking garage and a 23-story mixed-use building, which will contain an amenity plaza with an exercise room, a day spa, business offices, and 17 floors of apartments or condominiums.  (*Id.* ¶¶ 8, 11).  On July 30, 2007, the plaintiffs submitted an application for a foundation and site-work permit accompanied by a Traffic Impact Analysis ("TIA") to the City.  (*Id.* ¶ 10).  The TIA concluded that the construction project would generate 184 p.m. peak-hour trips to and from the Bissonnet right-of-way and that the corresponding increase in traffic would not have any adverse impact on the surrounding street system.  (*Id.* ¶ 11).

The City approved the TIA on September 4, 2007, confirming that Maryland Manor's proposed development did not create an adverse traffic impact.  (*Id.* ¶ 10).  On September 28, 2007, the City rescinded its approval of the TIA.  Maryland Manor alleges that the rescission was because of "neighborhood opposition to the project and consequent pressure placed on City elected officials based ostensibly on [the proposed project's] height."  (*Id.*).  The complaint does not indicate what reasons, if any, the City offered to justify its rescission, but does allege that the City did not express

---

[1]  Because the defendant has moved to dismiss Maryland Manor's complaint under Rule 12(b)(6), this court accepts as true the complaint's factual allegations.  *See Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2079 (2011).

any traffic-related concerns.  (*Id.* ¶ 16).

After the City rescinded its approval of the TIA, the plaintiffs "engaged in a lengthy plan review process associated with its permit application."  (*Id.* ¶ 13).  The plaintiffs "replied to staff comments, revised plans, and provided additional information approximately ten . . . different times to the City Planning Department," but received "pretextual reasons for the continued and serial denial of . . . the foundation permit."  (*Id.*).  At one point, the City even tried "to . . . pass a new City ordinance selectively aimed at [the plaintiffs'] project."  (*Id.* ¶ 14).

On April 7, 2009, the plaintiffs submitted a revised permit application that, like its July 30, 2007 application, also proposed a development that would generate 184 p.m. peak-hour trips; the City did not approve this application.  (*Id.* ¶16).

In August 2009, the City approved a different permit application, which Maryland Manor had submitted on August 4 "under protest and subject to [a] challenge of the denial" of its April 7 application.  (*Id.* ¶ 15).  The August 4 application "called for a project that would generate only a net 120 P.M. peak hour automobile trips onto and off of the Bissonnet right of way."  (*Id.*).  When it approved the August 4 application, the City found that the plaintiffs' April 7 application did not meet the criteria of § 40-86 of the Houston Code of Ordinances because the proposed development would create an extraordinary traffic hazard and would excessively interfere with the normal use of the Bissonnet right-of-way.  (*Id.*).

After unsuccessfully appealing the denial of its April 7 permit application—first to the City of Houston General Appeals Board and then to the Houston City Council—Maryland Manor filed this action against the City, asserting five causes of action.  (*Id.* ¶¶ 23, 24).  The first two causes of action are brought under 42 U.S.C. § 1983.  In the first § 1983 cause of action, Maryland Manor

3

alleges that the City violated its federal substantive due process rights in two ways.  First, Maryland Manor alleges that the City acted arbitrarily and capriciously in denying the April 7, 2009 permit application because the driveway-permit ordinance did not authorize the City "to regulate density" or to consider the traffic impact of the proposed project further down the street where the driveway connects or at a nearby intersection not in the driveway's immediate vicinity.  (*Id.* ¶¶ 7, 19, 20, 27). Second, Maryland Manor alleges that the City's denial of its April 7 permit application was not rationally related to a legitimate government interest because the traffic increase associated with the proposed development would not create any adverse traffic impacts.  (*Id.* ¶¶ 11, 21, 27, 29).  In the second cause of action, Maryland Manor alleges a federal equal protection clause violation.  The complaint states that the City has not applied either the driveway-permit ordinance or the interpretation of the ordinance applied to Maryland Manor to any similarly situated developer.  (*Id.* ¶ 33).  The complaint specifically identifies six "recently permitted or completed projects" to which the City has not applied the ordinance and states that there are at least 36 other projects to which the ordinance has not been applied.  (*Id.* ¶¶ 33, 34).  The identified developers include LaMaison on Revere Apartments located at 2727 Revere Street; Fairmount Museum District Apartments located at 4310 Dunlavy Street; the Medical Clinic of Houston in the 1700 block of Sunset Boulevard; Sonoma at the intersection of Dunstan Road and Kelvin Street; Millenium Greenway at 4100 Southwest Freeway; and 2121 Mid Lane located at 2121 Mid Lane.  (*Id.* ¶ 33).  Maryland Manor alleges that the City had no rational basis for applying the driveway-permit ordinance to Maryland Manor but not to any of the six developers for the properties the complaint identifies.  (*Id.* ¶ 32). In the third and fourth causes of action, Maryland Manor alleges that the City violated its substantive due process and equal protection rights under the Texas constitution.  (*Id.* ¶ 36).  In the fifth cause

4

of action, Maryland Manor alleges that the City violated its vested rights under Texas Local Government Code § 245.002(a) by failing to consider its application solely on the basis of rules, regulations, and ordinances that were in effect on the date Maryland Manor submitted its first permit application, as § 245.002(a) requires.  (*Id.* ¶ 37).  The plaintiffs do not dispute that the driveway ordinance was in effect on July 30, 2007, but they allege that "[n]o reasonable reading of any City ordinance [at that time] . . . could have resulted in the denial of or failure to approve [Maryland Manor's] April 7, 2009 . . . permit application."  (*Id.* ¶ 39).

### B.        The Motions to Dismiss

On October 4, 2010, the City moved to dismiss the plaintiffs' federal claims under Rule 12(b)(6).  (Docket Entry No. 33).  After the plaintiffs responded, (Docket Entry No. 34), the City filed an amended motion to dismiss,  (Docket Entry No. 40).  Because the amended motion expands on the original motion, the original motion is moot and only the amended motion is considered.

In the amended motion, the City argues that the federal equal protection claim should be dismissed because the six developers identified in the complaint are not similarly situated to the plaintiffs and because the driveway-permit ordinance is rationally related to the legitimate government objective of regulating traffic flow.  (*Id.*, 3–5).  The City also argues that the federal substantive due process claim fails because Maryland Manor has no "constitutional right to build a twenty-three . . . story building and a five level parking garage [that] will generate 184 P.M. peak hour automobile trips to and from the Bissonnet right of way," (*id.*, 6), and because the City's denial of the plaintiffs' permit application was rationally related to traffic regulation, (*id.*, 6–7).[2]  On March

---

[2]   The amended motion also argues that the plaintiffs have no standing to seek injunctive relief because the plaintiffs are not in immediate danger of sustaining a direct injury.  (Docket Entry No. 40, 9–10).  Because Maryland Manor has not moved for an injunction at this time, this part of the City's motion is not ripe.

15, 2011, after the plaintiffs responded to the City's amended motion to dismiss and after the City retained additional counsel, the City filed a reply to the plaintiffs' response.  (Docket Entry No. 66).  The reply makes new arguments in support of the amended motion to dismiss.  As to the equal protection claim, the City argues that the plaintiffs' complaint is deficient because it failed to allege exactly how the six identified properties are similar to Maryland Manor and because the plaintiffs have not alleged that the identified properties "operated at . . . a similar [level of service] as 1717 Bissonnet."  (*Id.*, 4–5).  As to the substantive due process claim, the City argues that the "Complaint fails to allege [that] there is *no* conceivable legitimate objective" for the City's denial of the plaintiffs' application.  (*Id.*, 15).

On November 5, 2010, the City filed a motion to dismiss the plaintiffs' state constitutional and statutory claims.  (Docket Entry No. 38).  The City argues that the state constitutional claims should be dismissed because the Texas constitution precludes monetary damages for equal protection and due process claims.  (*Id.*, 5–7).  Maryland Manor does not dispute the City's argument that it may not recover damages for its state constitutional claims, but contends that it seeks only equitable relief.  (Docket Entry No. 45, 2–3).  The City also argues that the plaintiffs have not stated a claim under the Vested Rights Act because the driveway-permit ordinance was in effect when Maryland Manor submitted its first permit application.[3]  (Docket Entry No. 38, 8–11).

Each argument is addressed in detail below.

---

[3]  The City moved to dismiss the state-law claims under Rule 12(b)(1), which governs challenges to a court's subject matter jurisdiction.  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."  *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)).  This court has subject matter jurisdiction over the plaintiffs' federal claims under 28 U.S.C. § 1343(a) and supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367(a).  The City's motion to dismiss the state-law claims under Rule 12(b)(1) is construed and analyzed as a motion to dismiss under Rule 12(b)(6).  The result would be the same under Rule 12(b)(1).

6

## II.       The Motion for Leave to Amend

On November 22, 2010, after the City filed its motions to dismiss Maryland Manor's state and federal claims, the plaintiffs filed a motion for leave to file a third amended complaint.[4] (Docket Entry No. 42).  The motion states that this court held a scheduling conference on September 24, 2010, during which this court specifically discussed a deadline by which the plaintiffs could amend their complaint without the need to show cause, and that this court subsequently entered a scheduling order setting an October 29, 2010 deadline for amending pleadings.  (*Id.*, 1).  The plaintiffs state that "[b]ecause the deadline for amending pleadings had been discussed at the scheduling conference and a deadline by which to amend had been entered by the Court, Plaintiffs did not file a motion for leave prior to filing its Third Amended Complaint as Plaintiffs were of the understanding that leave was not required if such amended pleading was filed by the deadline." (*Id.*, 1–2).

After a party has amended its complaint once, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2).  Maryland Manor filed its third amended complaint without the City's written consent and without this court's leave.  This court's scheduling order set October 29, 2010 as the deadline for filing a motion for leave to amend pleadings and clearly stated that "[p]arties filing motions after this deadline must show good cause."  (Docket Entry No. 31, 1). Maryland Manor's understanding of this court's scheduling order does not establish good cause for filing an untimely motion for leave to amend.  Setting this aside, however, the third amended complaint is almost identical to the second amended complaint.  The minor differences between the

---

[4]  The plaintiffs had already filed their third amended complaint on October 28, 2010, without asking for leave of court.

third amended complaint and the second amended complaint would not change the court's resolution of the City's motions to dismiss. Maryland Manor's motion for leave to amend is denied both because it is untimely and because amendment would be futile.

## III. The Motion to Dismiss under Rule 12(b)(6)

### A. The Legal Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b) (6). In *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555, (2007), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). *Twombly* abrogated the Supreme Court's prior statement in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Twombly*, 550 U.S. at 562–63. To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). In *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court elaborated on the pleading standards discussed in *Twombly*. The Court explained that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). *Iqbal* explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing

*Twombly*, 550 U.S. at 556).  The *Iqbal* Court noted that "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  The Court concluded that "Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Id.*

To withstand a Rule 12(b)(6) motion, a "complaint must allege 'more than labels and conclusions,'" and "'a formulaic recitation of the elements of a cause of action will not do.'" *Norris v. Hearst Trust*, 500 F.3d 454, 464 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555); *see also Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 129 S.Ct. at 1949 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).  "'Rule 8(a)(2) . . . requires a 'showing,' rather than a blanket assertion, of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.'"  *Dark v. Potter*, 293 F. App'x 254, 258 (5th Cir. 2008) (unpublished) (per curiam) (quoting *Twombly*, 550 U.S. at 556 n.3).  "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (footnote omitted) (quoting *Twombly*, 550

U.S. at 555).  "Conversely, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'"  *Cuvillier*, 503 F.3d at 401 (quoting *Twombly*, 550 U.S. at 558).

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice.  *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir.2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion." (internal citation omitted)). However, a plaintiff should be denied leave to amend a complaint if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face." 6 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (2d ed. 1990); *see also Ayers v. Johnson*, 247 F. App'x 534, 535 (5th Cir. 2007) ("'[A] district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.'" (quoting *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999))).

When, as here, a defendant attaches to the motion to dismiss documents that are matters of public record, the court may consider those documents in deciding the motion to dismiss.  *See Funk*

*v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.").

### B.    The Federal Equal Protection Claim

In response to the City's motion to dismiss, Maryland Manor contends that it properly alleged a class-of-one equal protection claim.  "To establish such a claim, the plaintiff must show that (1) he or she was treated differently from others similarly situated and (2) there was no rational basis for the disparate treatment."  *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 824 (5th Cir. 2007) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).  The City argues that Maryland Manor's class-of-one equal protection claims must be dismissed for three reasons.

First, the City argues that the six properties the complaint identifies as similarly situated to Maryland Manor's proposed development are not similarly situated because they are not "high rise complexes . . . located adjacent to a two-lane collector street."  (Docket Entry No. 40, 4).  1717 Bissonnet will be a 23-story building on a two-lane collector street.  By contrast, LaMaison at Revere Apartments is a four-story apartment complex located on a single-lane local street; Fairmount Museum District Apartments is a four-story apartment complex located on a two-lane collector street; the Medical Clinic of Houston is a two-story commercial building located at the intersection of a one-lane local street and a two-lane local street; Sonoma will be a seven-story building located at the intersection of one-lane local streets; Millenium Greenway is a four-story apartment complex located on a four-lane state highway; and 2121 Mid Lane is a five-story

apartment complex located on a two-lane local street.[5]  (*Id.*,  3–4).

The City is correct that "a violation of equal protection occurs only when the government treats someone differently than others similarly situated; if the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action—even if irrational—does not deny them equal protection of the laws." *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988).  But the City's argument fails because the differences the City identifies between Maryland Manor's proposed development and the six comparators— height and location—do not establish as a matter of law that Maryland Manor's proposed development is different from the six comparators in a way that is relevant to the City's proffered justification for denying the permit application.  *Cf. Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011) (stating that to prevail on a class-of-one claim, the plaintiff must show that the identified comparators are "similarly situated in all *relevant respects*." (emphasis added)); *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010) ("To be considered 'similarly situated,' a plaintiff and his comparators (those alleged to have been treated more favorably) must be . . . directly comparable in all *material respects*." (emphasis added)).

The City denied Maryland Manor's April 7, 2009 driveway-permit application based on the

---

[5]  The City attached documents to its amended motion to dismiss to show the type of streets where the six properties identified in the complaint are located.  These documents include two street-classification tables that are part of the City's 2006 and 2009 Major Thoroughfare and Freeway Plan and the City's 2007 Major Thoroughfare and Freeway Plan Policy Statement.  These documents prompted Maryland Manor to argue both that its complaint survives a Rule 12(b)(6) motion to dismiss and that the City would not be entitled to summary judgment were this court to convert the City's motion to dismiss into one for summary judgment.  In its response, Maryland Manor attached numerous exhibits to support its argument that the City is not entitled to summary judgment and filed a motion to supplement the evidence it originally attached to its response.  (Docket Entry No. 69).  Because the documents the City attached to its amended motion to dismiss are public records, this court may consider them without converting the motion to dismiss into a motion for summary judgment.  *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).  Because the motion to dismiss is not converted to one seeking summary judgment, and because the City has not moved for summary judgment, this court need not address Maryland Manor's summary judgment arguments or consider the exhibits submitted to support these arguments.  Maryland Manor's motion to supplement evidence is denied as premature.

permit ordinance.  Maryland Manor contends that the City did not apply the driveway-permit ordinance to the six comparators.  Height differences between the proposed development and the six comparators do not necessarily establish that the proposed development is not similarly situated to the comparators with respect to the amount of traffic each development generates.  Depending on the planned occupancy and usage, a 23-story building may generate traffic comparable to that generated by a four- or five-story apartment complex with multiple units.  Similarly, the fact that 1717 Bissonnet will be located on a two-lane collector street does not mean that the six comparators, five of which are located on different types of streets, do not have a similar traffic impact on their surrounding street systems.  A large development located on a busy, four-lane state highway may have a traffic impact on that highway similar to the impact a smaller development has on a two-lane collector street.  And developments located on one- or two-lane local streets may have even a greater traffic impact on the surrounding street system than a development located on a two-lane collector street because local streets are designed to carry less traffic than collector streets.  (*See* Docket Entry No. 40, Ex. 4).  On the current record, this court cannot conclude that, as a matter of law, Maryland Manor's proposed development is not similarly situated to the six comparators specifically identified in its complaint.

Second, the City argues that the plaintiffs failed sufficiently to plead that the six comparators are similarly situated to Maryland Manor.  "A 'class of one' plaintiff might fail to state a claim by omitting key factual details in alleging that it is 'similarly situated' to another."  *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir. 2007).  "[A]fter *Twombly* and *Iqbal*, it is insufficient to simply allege that other, unidentified properties have 'comparable' or 'similar' conditions—the claim must be supported by specific facts plausibly suggesting the conditions on the properties and

13

the properties themselves are similar in all material respects."   *Kansas Penn Gaming, LLC v. Collins*, --- F.3d ----, 2011 WL 3849751, at *8 (10th Cir. Sept. 1, 2011).   Consistent with this principle, courts have routinely dismissed class-of-one claims that merely allege the existence of other similarly situated individuals or entities and do not state any facts to support this claim.   *See, e.g., Glover v. Mabrey,* 384 F. App'x 763, 778 (10th Cir. 2010) ("[Plaintiff] has failed to allege, as it must, the identity or characteristics of other, similarly situated contractors and how those similarly situated contractors were treated differently."); *Kyles v. Garrett*, 222 F. App'x 427, 429 (5th Cir. 2007) (holding that a prisoner's conclusory allegations that others similarly situated had been granted parole were insufficient to state an equal protection claim where the prisoner "offer[ed] no specific factual support for his assertions"); *King v. N.Y. State Div. of Parole*, 260 F. App'x. 375, 380 (2d Cir. 2008) (holding that because the plaintiff "failed to identify a single individual with whom he can be compared for Equal Protection purposes," his class of one equal protection claim was properly dismissed).   Courts have also dismissed class-of-one claims when the complaint identified other similarly situated persons but the supporting factual allegations showed that the identified persons were not similarly situated.   *See, e.g., Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 60 (2d Cir. 2010) (holding that the plaintiffs' complaint failed to state a class-of-one claim; the plaintiffs alleged that they proposed to build a 14-unit residential development, but the identified comparators were either commercial properties or single homes); *LaBella Winnetka*, 628 F.3d at 942 (holding that the plaintiff's class-of-one claim failed because the pleadings demonstrated that neither of two identified properties was similar to the plaintiff's property).

Maryland Manor's complaint identifies six other properties to which the City allegedly failed

to apply the driveway-permit ordinance.  The complaint does not demonstrate that these properties are *not* similar to the plaintiffs' proposed development.  As the City indicates, four of the comparators are four- or five-story apartment complexes.  It is plausible that a four- or five-story apartment complex could generate an increase in traffic in the surrounding street system similar to the increase generated by a 23-story development, depending on the planned usage and occupancy and the type of street system.  Though the issue is close, the plaintiffs have alleged sufficient facts to "nudge[] their claim[] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Third, the City argues that the plaintiffs' class-of-one claim fails because the City's decision to deny the April 7, 2009 permit application was rationally related to the legitimate government objective of regulating traffic.  (Docket Entry No. 40, 5; Docket Entry No. 66, 6–7).  "To pass rational basis review, it is not sufficient for the state action merely to serve some legitimate government purpose.  Instead, there must be some rational basis for the *classification*, which must serve legitimate state ends." *Newman Marchive P'ship, Inc. v. Hightower*, 349 F. App'x 963, 965 (5th Cir. 2009).  "[T]he rational basis prong of a 'class of one' claim turns on whether there is a rational basis for the distinction, rather than the underlying government action." *Gerhart v. Lake Cnty., Mont.*, 637 F.3d 1013, 1023 (9th Cir. 2011).  Because the City does not argue that it had a rational basis for treating Maryland Manor differently from other developers, the City's argument fails even though, generally stated, the City has a rational basis for denying Maryland Manor's permit application.

The City's motion to dismiss is denied as to the class-of-one equal protection claim.  This ruling, of course, does not preclude the City from moving for summary judgment based on the same or similar arguments, with an expanded record.

15

### C.     The Federal Substantive Due Process Claim

"Substantive due process 'bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them.'" *Marco Outdoor Adver., Inc. v. Reg'l Transit Auth.*, 489 F.3d 669, 673 n.3 (5th Cir. 2007) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)); *see also Simi Inv. Co., Inc. v. Harris Cnty., Tex.*, 236 F.3d 240, 249 (5th Cir. 2000). ("Substantive due process analysis is appropriate only in cases in which government arbitrarily abuses its power to deprive individuals of constitutionally protected rights."). "[I]n the context of land use regulation, that is, in situations where the governmental decision in question impinges upon a landowner's use and enjoyment of property, a land-owning plaintiff states a substantive due process claim where he or she alleges that the decision limiting the intended land use was arbitrary or capricious." *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 601 (3d Cir. 1995), *overruled on other grounds as recognized in United Artists Theatre Circuit, Inc. v. Township of Warrington*, 316 F.3d 392, 400 (3d Cir. 2003). "[G]overnment action comports with substantive due process if the action is rationally related to a legitimate government interest." *FM Props. Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996). "The question is only whether a rational relationship exists between the [action] and a *conceivable* legitimate objective. If the question is at least debatable, there is no substantive due process violation." *Simi Inv.*, 236 F.3d at 251 (emphasis added) (quoting *FM Props.*, 93 F.3d at 174).

To prevail on a substantive due process claim, a plaintiff must first make a showing that "it held a constitutionally protected property right to which the Fourteenth Amendment's due process protection applies." *Simi Inv.*, 236 F.3d 249–50. Such property rights must be established by state law. "Property interests are not created by the Constitution; rather, they stem from independent

16

sources such as state statutes, local ordinances, existing rules, contractual provisions, or mutually explicit understandings." *Blackburn v. City of Marshall*, 42 F.3d 925, 936–37 (5th Cir. 1995) (citing *Perry v. Sindermann*, 408 U.S. 593, 599-601 (1972)).  "In order to allege a due process deprivation of a property interest under the Fourteenth Amendment, the plaintiff must demonstrate a 'legitimate claim of entitlement' to that interest." *Nunez v. Simms*, 341 F.3d 385, 387 (5th Cir. 2003) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

The City first argues that the substantive due process claim fails because Maryland Manor does not have a property interest to which the Fourteenth Amendment's due process protection applies.  Under Texas law, it is well-settled "that an abutting property owner possesses an easement of access which is a property right; that this easement is not limited to a right of access to the system of public roads; and that diminishment in the value of property resulting from a loss of access constitutes damage." *State v. Heal*, 917 S.W.2d 6, 9 (Tex. 1996) (internal quotation marks omitted); *see also City of Beaumont v. Marks*, 443 S.W.2d 253, 255 (Tex. 1969) ("It is well settled that abutting property owners . . . have certain property rights in existing streets and highways in addition to their right in common with the general public to use them.  Generally, the most important of these private rights is the access to and from the highway or street.").  The plaintiffs' property abuts Bissonnet Street.  The plaintiffs allege that because the City failed to grant Maryland Manor's application for a permit to construct a driveway on Bissonnet in connection with a project that generates 184 p.m. peak-hour trips, the City has interfered with Maryland Manor's state-law property right of access to this street.  That the City eventually granted Maryland Manor a driveway permit for a development that generates only 120 p.m. peak-hour trips does not change the fact that the City denied Maryland Manor's April 7, 2009 permit application.  Maryland Manor alleges that

17

it submitted its successful August 2009 permit application under protest and subject to a judicial challenge of the City's denial of the April 7, 2009 application.

The City argues that Maryland Manor's substantive due process claim must be dismissed because the decision to deny the April 7, 2009 permit application was rationally related to the City's concern that increased traffic near the proposed development "would create an extraordinary traffic hazard or would excessively interfere with the normal use of the street right-of-way."  HOUSTON, TEX., CODE OF ORDINANCES § 40-86(c)(3).  Undoubtedly, the City has a legitimate government interest in regulating traffic.  *See, e.g., United States v. Marcavage*, 609 F.3d 264, 287 (3d Cir. 2010) ("Traffic flow is undoubtedly a legitimate government interest."); *Stone v. City of Maitland*, 446 F.2d 83, 87–88 (5th Cir. 1971) (stating that "reducing traffic congestion" is a "constitutionally permissible objective"); *Enclave Arlington Assocs. Ltd. P'ship v. City of Arlington, Tex.*, 669 F. Supp. 2d 735, 746 (N.D. Tex. 2009) ("There can be no doubt that promoting and regulating traffic safety are rationally related to a legitimate government interest sufficient to foreclose a substantive due process claim.").  But Maryland Manor has alleged facts that it contends would show that the City's denial of its permit application was not rationally related to this legitimate government interest.  Maryland Manor has alleged that the increase in traffic associated with its proposed development—184 p.m. peak-hour trips—would not have any adverse traffic impacts on the surrounding street system; that Maryland Manor submitted to the City a traffic analysis that showed no adverse traffic impact on the surrounding street system; that on September 4, 2007, the City approved the traffic analysis and  confirmed that the proposed project did not create any adverse traffic impact; that on September 28, 2007, the City rescinded its approval for reasons unrelated to traffic impact; and that in August 2009, the City denied the April 7, 2009 permit application for the

reason that the proposed development would create an extraordinary traffic hazard or would excessively interfere with the normal use of the Bissonnet Street right-of-way. (Second Am. Compl. ¶¶ 10, 11, 15).  Maryland Manor has also alleged that, aside from the driveway permit, it had obtained all other approvals from the City necessary for construction to begin.  (*Id.* ¶ 16).  These allegations state a claim that the City stated it denied Maryland Manor's permit application based on the proposed project's traffic impact even though the City had found that the proposed project did not have any adverse traffic impact.  Maryland Manor's allegations sufficiently plead that the City acted arbitrarily and capriciously by denying the April 7, 2009 permit application.  The City's motion to dismiss is denied as to this claim.

Maryland Manor has also alleged that the City's actions violated substantive due process because the driveway-permit ordinance did not authorize the City to regulate density or to consider the traffic impact of the proposed project at an intersection that was not in the driveway's immediate vicinity.  The City does not violate due process merely because it acts in a manner not authorized by an ordinance.  To state a substantive due process claim, Maryland Manor must allege that the City's denial of its permit application was not rationally related to the City's legitimate interest in regulating traffic flow.  *See Simi Inv.*, 236 F.3d at 251 ("The question is only whether a rational relationship exists between the [action] and a conceivable legitimate objective. If the question is at least debatable, there is no substantive due process violation.").  If it is at least debatable that the proposed project would create an adverse traffic impact at a nearby intersection, the City's denial of the permit application was rationally related to its legitimate interest in controlling traffic flow even though the driveway-permit ordinance did not expressly state that the City should or could consider the traffic impact of the proposed development at a nearby intersection.  The City's motion

19

to dismiss is granted as to this aspect of the substantive due process claim.

     **D**     **The State Constitutional Claims**

     The City argues that the plaintiffs' state constitutional claims for monetary damages must be dismissed because the due process and equal protection provisions of the Texas Constitution do not authorize suits for damages.  Maryland Manor responds that it seeks only equitable relief for these claims.

     Suits under the Texas Constitution "are limited to equitable relief and do not allow a claim for monetary damages except to the extent specifically enunciated in the constitutional provision." *Nueces Cnty. v. Ferguson*, 97 S.W.3d 205, 217 (Tex. App.—Corpus Christi 2002, no pet.).  Neither the due process nor the equal protection provisions of the Texas Constitution authorize a suit for damages.  *See Patel v. City of Everman*, 179 S.W.3d 1, 13 (Tex. App.—Tyler 2004, pet. denied) ("The due process provisions of the Texas Constitution do not provide for a cause of action for damages, but rather only for direct claims seeking equitable relief."); *Vincent v. W. Tex. State Univ.*, 895 S.W.2d 469, 475 (Tex.App.—Amarillo 1995, no writ) (holding that no private right of action for money damages exists under the equal protection clause of the Texas Constitution).  The City's motion to dismiss is granted as to the state constitutional claims for monetary damages and denied as to the state constitutional claims for equitable relief.

     **E.**     **The Vested Rights Act Claim**

     The City argues that Maryland Manor has failed to state a claim for relief under § 245.002 of the Texas Local Government Code because Maryland Manor complains of the City's application of an ordinance in existence when the City denied the plaintiffs' April 7, 2009 permit application. "Section 245.002 of the Local Government Code recognizes vested rights.  Specifically, it requires

a regulatory agency to consider an application for a permit solely based on the regulations and ordinances in effect at the time the original application for permit is filed for review for any purpose." *Cont'l Homes of Tex., L.P. v. City of San Antonio*, 275 S.W.3d 9, 18 (Tex. App.—San Antonio 2008, pet. denied) (citing Tex. Local Gov't Code § 245.002).  Maryland Manor does not dispute that § 245.002 was in effect on July 30, 2007, the date it filed its first application with the City.  Maryland Manor contends that on that date, the City had not yet interpreted the driveway permit ordinance to permit consideration of the traffic impact of a proposed development at an intersection half a mile away from the driveway.  (Docket Entry No. 45, 5).  The plaintiffs offer no authority to support their position that § 245.002 provides a vested right to a certain interpretation of an ordinance.

Moreover, the driveway-permit ordinance does not limit the City's ability to consider the traffic impact of a proposed driveway in areas beyond the driveway's immediate vicinity.  The ordinance states that "[n]o person shall construct, or cause to be constructed, any driveway connecting private property with a public street without first obtaining a written permit therefor from the city engineer."  Houston, Tex., Code of Ordinances § 40-86(a).  On receiving a driveway-permit application, the City engineer must determine whether the proposed driveway is "necessary to provide reasonable access to the private property consistent with the safety and convenience of the public" by considering six factors.  *Id.* § 40-86(b).  One factor is "[t]he effect that the passage of vehicles to and from the private property will have on the safety of the traveling public and on the movement of traffic in the street to which the driveway connects."  *Id.* § 40-86(b)(3).  The City engineer "shall refuse to issue a permit for a single driveway opening unless it shall have been found to be necessary for reasonable access."  *Id.* § 40-86(c)(1).  The engineer "shall" also "refuse to issue

a permit for any driveway opening as to which it has been found that the proposed use of the driveway would create an extraordinary traffic hazard or would excessively interfere with the normal use of the street right-of-way." *Id.* § 40-86(c)(3). The statement that the City engineer may consider the traffic effect of a proposed development "on the movement of traffic *in the street to which the driveway connects*," *id.* § 40-86(b)(3) (emphasis added), supports the City's contention that it is not limited to considering the traffic effect of a proposed development at the precise point in the street where the driveway intersects.

Either because the City denied Maryland Manor's application based on an ordinance that was in effect at the time of the permit application or because the City's interpretation of that ordinance is correct, Maryland Manor failed to state a claim under § 245.002 of the Texas Local Government Code. The motion to dismiss is granted as to this claim.

## III.    Conclusion

This court resolves the parties' pending motions as follows:

- • The City's motion to dismiss the federal constitutional claims (Docket Entry No. 33) is denied as moot.

- • The City's motion to dismiss the state-law claims (Docket Entry No. 38) is granted in part and denied in part. The state constitutional claims for monetary damages and the § 245.002 claim are dismissed with prejudice. The motion to dismiss is denied as to the state constitutional claims for equitable relief.

- • The City's amended motion to dismiss the federal constitution claims (Docket Entry No. 40) is granted in part and denied in part. The motion to dismiss the class-of-one equal protection claim is denied. The motion to dismiss the substantive due process

claims is granted as to the claim alleging that the City acted without ordinance authority and denied as to the claim alleging that the City's action was not rationally related to regulating the flow of traffic because the proposed project will have no adverse impact on traffic.

- The plaintiffs' motion for leave to file a third amended complaint (Docket Entry No. 42) is denied.

- The plaintiffs' motion to supplement evidence in support of their response to the City's amended motion to dismiss the federal constitutional claims (Docket Entry No. 69) is denied.

A status and scheduling conference is set for **September 22, 2011**, at 3:00 p.m. in Courtroom 11-B.

SIGNED on September 8, 2011, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

23